PENTCO, INC., d/b/a The Penthouse Health Club, Diane Hsieh, d/b/a Imperial Health Spa, Janet Smith, d/b/a Escort & Modeling Service, Reap, Inc., d/b/a Executive Sauna Club, Edward Martin & Peter Ross, d/b/a Executive Suite, and Janet Boyter, d/b/a Magic Fingers, Plaintiffs,

v.

Tom MOODY, Mayor of the City of Columbus, Ohio, Bernard T. Chupka, Safety Director of the City of Columbus, Chief Earl Burden, Chief of Police of the City of Columbus, Defendants.

No. C–2–77–749.

United States District Court,
S. D. Ohio, E. D.

March 7, 1978.

Laurence E. Sturtz, Columbus, Ohio, for plaintiffs.

James J. Fais, Asst. City Atty., Columbus, Ohio, for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

### I

This matter is before the Court for decision on the merits following a consolidation of the hearing on preliminary injunction and trial on the merits pursuant to Fed.R. Civ.P. 65(a)(2). The Court's findings of fact and conclusions of law as required by Fed. R.Civ.P. 52 are set forth herein.

Chapter 540 of the Columbus City Code purports to regulate the rendering of non-medical massages for a consideration. The plaintiffs challenge the legality of this ordinance on both federal and state constitutional and statutory grounds. Plaintiffs seek declaratory and injunctive relief. The Court finds that it has jurisdiction and that the issues raised are properly before the Court.

■ By an order filed December 27, 1977, the Court held that "a municipality may regulate the rendering of non-medical massages by means of licensing, and may, as part of such regulation, prohibit the rendering of massages by persons of one sex to persons of the other sex." To pass constitutional muster under the Fourteenth Amendment, however, such municipal legislation must, at the very least, bear some reasonable relationship to the protection of a legitimate governmental goal. *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). If government regulation affects a fundamental right, then it must meet the stricter standard of a compelling state interest. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The plaintiffs contend that the Court's review of this ordinance would be governed by the "compelling interest" standard, while the defendants argue that the "rational basis" test should be applied.

■ The Court concludes that the opportunity to operate a massage establishment is not a fundamental right which requires the entire ordinance to be supported by a compelling state interest. The ordinance does, however, affect other rights, such as the Fourth Amendment guarantee against unreasonable searches and seizures, which must be characterized as fundamental. Where these rights are involved the Court has applied a compelling state interest standard.

**1004**

## II

Since the plaintiffs challenge the Columbus ordinance in its entirety, the Court will undertake a section-by-section review.

*Section 540.01*

■ The Court finds the definitions, § 540.01, to pass facial constitutional muster. The plaintiffs contend that these definitions are unconstitutionally vague and overbroad. While there may be some merit to the plaintiffs' position in the application of § 540.01, the Court does not find the definitions to be unconstitutional on their face. I believe that § 540.01 is fairly susceptible of interpretation that would avoid possible constitutional infirmities. Thus, abstention in favor of state court construction is appropriate. *See, Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973).

*Section 540.02*

■ The plaintiffs do not contest the right of the City of Columbus to regulate massage parlors, provided such regulations do not unconstitutionally infringe on protected interests. As noted in this Court's order of December 27, 1977, the Supreme Court has held that the licensing of massage parlors is within the legitimate scope of a state's police power. Section 540.02, therefore, is constitutional.

*Section 540.03*

■ Section 540.03 exempts certain businesses from the provisions of Chapter 540. The Court finds the exemption of businesses which are already required to be licensed and subject to regulation to be a legitimate classification. *See, Colorado Springs Amusements, Ltd. v. Rizzo,* 524 F.2d 571, 576 n.16 (3d Cir. 1975).

*Section 540.04*

■ Plaintiffs next challenge § 540.04(B) which requires the applicant for a license to "set forth the exact nature of the massage to be administered." The constitution generally requires that municipal ordinances give a person of ordinary intelligence fair notice of what the law commands or forbids. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). In *Papchristou,* however, the Supreme Court noted that "[i]n the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed." 405 U.S. at 162, 92 S.Ct. at 843. In *United States v. Raines,* 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960) the Supreme Court stated that:

The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases . . . The Court [in *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953)] further pointed to the fact that a limiting construction could be given to the statute by the court responsible for its construction if an application of doubtful constitutionality were in fact concretely presented. We might add that application of this rule frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.

The Court agrees with the plaintiffs that § 540.04(B) is susceptible of more than one interpretation. The Court does not believe, however, that this section is unconstitutional merely because it *might* be applied in an unconstitutional manner. The Court holds that § 540.04(B) is susceptible to a limiting construction in its application which would render the constitutional challenge moot.

■ Plaintiffs also challenge § 540.04(C) which lists information which must be disclosed in an application for a license to operate a massage establishment. The disclosure required by § 540.04(C) applies to "any partner or limited partner of a partnership, and any officer or director of a corporate applicant and any stockholder holding more than ten (10) percent of the stock of a corporate applicant." The Court believes that a legitimate governmental interest is served by requiring disclosure as to partners, officers and directors since these

are the individuals usually associated with the management and operations of a corporation's business. This requirement provides information to the city licensing agency on those individuals who would most likely be involved in the day-to-day operation of the massage establishment whether the application is made by the individual or through a partnership or corporate entity. The Court cannot find a similar governmental interest with respect to limited partners and stockholders who ordinarily possess only an investment interest and are not involved in day-to-day management. The identity and personal history of such investors in partnerships and corporations which operate massage establishments is simply not reasonably related to a legitimate governmental interest.

The Court further finds there to exist a rational basis for each of the disclosures required by § 540.04(C). In so concluding the Court considered the nature of the intrusion and balanced an individual's right to privacy with the city's right to know about the persons whom it licenses.

*Section 540.05*

■ Section 540.05(A) requires the Section of Licenses to issue a license upon proper application, unless certain conditions exist. Subsection (A)(1) prohibits licensing of a facility that would not be in compliance with applicable laws and is constitutionally unoffensive. Subsection (A)(3) prohibits the issuance of a license if the application is incomplete or contains a material misrepresentation. The Court finds no constitutional infirmity in this section.

■ Subsection (A)(2) of § 540.05 provides that a license shall issue unless the Section of Licenses finds

    (2) that the applicant and any other person who will be directly or indirectly engaged in the management and operation of a massage establishment has been convicted of two or more felonies within the past five years or any sex-offense within the past five years.

The Court is unable to discern, and the defendants have not offered, any reasonable relationship between prior felony convictions and one's standing to operate a massage establishment. The mere fact that one has been convicted of two felonies within the preceding five year period does not support a reasonable inference that a massage establishment would be operated in an unlawful manner. While some convictions arising out of the operation of a massage establishment might support such an inference, felonies of any nature do not.

The defendants contend that massage establishments have become fronts for illicit sexual relations for hire. Even assuming this to be true, the Court cannot find a rational basis for the automatic denial of a license if the applicant has been convicted of a sex offense within the preceding five years. The Court notes that the term "sex offense" is undefined, but presumably includes misdemeanors as well as felonies. This provision of § 540.05(A)(2) suffers the constitutional infirmities of vagueness and overbreadth. While the term "sex offense" may be subject to a narrowing interpretation the Court does not believe that any such interpretation could cure the other constitutional defects. As with felonies in general, the Court finds no reasonable relationship between a conviction for any sex offense and unfitness to operate a massage establishment.

■ Furthermore, the law disfavors irrebuttable presumptions. *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). Although conviction of certain felonies or sex offenses may be a factor upon which the City could base the denial of a license, the presumption that any such conviction automatically renders an applicant unfit is repugnant to the due process and equal protection clauses of the Fourteenth Amendment. In somewhat similar situations the Supreme Court has held that the state must afford an individual an opportunity to controvert the statutory presumption. *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551

(1972); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). The ordinance here in question affords no opportunity for an applicant to explain the circumstances of prior convictions or demonstrate why such convictions do not render the applicant unfit for a license.

## Section 540.06

Section 540.06(A) provides, in part, that

The Section of Licenses shall refuse to issue or renew a massage establishment license . . . where it finds (1) a section of chapter 540 of the Columbus City Codes was violated upon the establishment premises; (2) a violation of the Ohio Revised Code or Columbus City Codes was committed upon the establishment premises . . .

Fairly read, this section imposes a mandatory duty on the Section of Licenses not to issue or renew a license where it finds that any violation of the City Code or Ohio Revised Code has occurred on the premises regardless of the nature and severity of the offense, who committed it, or when it occurred. Thus, it appears that a housing code violation, since corrected, would preclude issuance or renewal of a license.

■ There is no question that a municipality has a legitimate concern for the operation of businesses in a lawful manner. This concern may be protected by refusal to license a business which continually operates in violation of city or state laws that jeopardize the health, safety or welfare of the community. The City may not, however, deny a license merely because an offense was committed on the premises regardless of whether the licensee was at fault. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The Court also agrees with the plaintiffs that an automatic denial of a license or refusal to renew regardless of the nature of the offense is arbitrary and unrelated to any legitimate government interest.

■ Section 540.06 also provides that a license may be revoked or suspended if a violation of law occurs on the premises, a material misrepresentation appears on the license application, a law enforcement officer or health inspector is denied permission to inspect the premises, or an unlicensed person administers a massage. The ordinance does not provide the licensee with an opportunity for hearing prior to the revocation or suspension of the license, but does provide a method of appeal from adverse decisions of the Section of Licenses after the revocation or suspension. The defendants correctly state that whether a prior hearing is required must be determined by a balancing of the government function with the private interest affected. *See, Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). While the plaintiffs' interest in the instant case may not be as great as the welfare recipients in *Goldberg,* their interest is significant. The revocation or suspension of their license would require the immediate cessation of plaintiffs' business for an indefinite period of time. The Supreme Court has characterized such consequences as irreparable harm. *Doran v. Salem Inn,* 422 U.S. 922, 932, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). The City's interest may outweigh the plaintiffs' interest if circumstances exist which would pose an immediate threat to the health, safety or welfare of the community. A serious fire code violation may be an example of such a circumstance. This ordinance, however, makes no provision for a prior hearing regardless of the circumstances upon which the revocation or suspension is proposed. The Court finds the City's interest in a minor code violation or a violation subject to legitimate factual dispute does not outweigh the plaintiffs' interest in the operation of their business in the absence of a serious threat to health, safety or welfare. Thus, the Court holds the post revocation or suspension hearing, regardless of circumstances, to be violative of the Due Process Clause.

## Section 540.07

■ Section 540.07 requires that those who desire to administer massages (massage technicians apply for a license and furnish certain information in connection

with that application. With respect to the information required by § 540.07(B)(1)–(6) the Court has found a rational basis for disclosure by an applicant for a massage establishment license. For the same reasons, the Court finds disclosure by massage technician applicants to be constitutional.

■ Section 540.07(B)(7) requires that an applicant for a massage technician license certify that he or she has satisfactorily completed 160 hours of course instruction in anatomy, physiology and massage at a school approved by the Ohio State Medical Board. In an attempt to show a rational basis for such a requirement, the defendants adduced the testimony of Keith Thompson. Mr. Thompson is licensed to administer massage and to give instruction in massage by the Ohio State Medical Board. Mr. Thompson opined that the administration of any type of massage stimulates certain reactions in the human body. He further testified that some of these reactions may, in certain circumstances, be detrimental to the health of the recipient. Thus, Thompson concludes that training should be required of all persons who administer massages in order to insure that a massage would not be inappropriate and that the massage is given properly.

While the Court is convinced that Mr. Thompson is sincere in his beliefs, the Court does not find that the risks attending the administration of a massage to be significant. Thompson testified that an improper massage creates a *possibility* or *potential* of harm. There is no evidence from which the Court can reasonably infer that there is a *probability* of harm or that the possible harm is of a serious or permanent nature.

The type of massage which plaintiffs purport to render, and which Chapter 540 regulates, is commonly called a non-medical or non-therapeutic massage. Such a massage is not held out as treatment for ailments but merely as a method of relaxation. Chapter 540 does not require training to give all so-called non-therapeutic massages but only those given for consideration. Any potential for harm, however, is the same regardless of whether a massage is given for consideration, or as a gesture of affection between husband and wife. The Court concludes, therefore, that § 540.-07(B)(7) is arbitrary and unrelated to any legitimate governmental interest.

*Sections 540.08 and 540.09*

Sections 540.08(A)(1) and 540.09(A)(1) provide that a license for a massage technician shall be denied or non-renewed and may be revoked or suspended if the applicant has been convicted of two or more felonies or any sex offense within the prior five years. These provisions are similar to § 540.05(A)(2) discussed above, and fail to pass constitutional muster for the same reasons. Similarly, the hearing procedure provided by § 540.09, which fails to provide for a hearing prior to revocation or suspension, regardless of circumstances, is also constitutionally deficient.

*Section 540.10*

The requirements of § 540.10 appear to the Court to be reasonably related to a legitimate governmental interest, and, therefore, pass constitutional scrutiny.

*Section 540.11*

■ The plaintiffs' complaint alleges that § 540.11(A)(1), (2) and (8) are unconstitutional under Article XVIII, Section 3 of the Ohio Constitution. Article XVIII, Section 3 reserves to municipalities all powers of local self-government, including police powers, which "are not in conflict with general laws." Since R.C. § 2907.09 regulates public nudity but not private nudity, the plaintiffs argue that those provisions of Chapter 540 which require the massage technician and patron to be clothed are in conflict with state law and beyond the City's legislative authority. The Court does not agree. Applying the test of *Auxter v. City of Toledo,* 173 Ohio St. 444, 183 N.E.2d 920 (1962) and *Village of Struthers v. Sokol,* 108 Ohio St. 263, 140 N.E. 519 (1923) the Court does not find § 540.11 to be in conflict with R.C. § 2907.09. The fact that the state has legislation controlling public nudity does not create a general law authorizing private nudity. In the Court's opinion § 540.11 and R.C. § 2907.09 regulate differ-

ent types of activity and are in no way inconsistent.

■ Plaintiffs also challenge § 540.-11(A)(4) which restricts the operation of a massage establishment to the period between 8:30 a. m. and 9:30 p. m. The Court believes this restriction to be arbitrary and not reasonably related to a legitimate governmental interest. The defendants assert that this restriction is designed to diminish illicit sexual activity for hire on the assumption that one does not seek a legitimate massage between the hours of 9:30 p. m. and 8:30 a. m. This assumption does not appear reasonable to the Court. A stipulation entered in this case indicates that no prostitution related arrests or convictions have occurred with respect to the plaintiffs. The Court also notes that the illicit sexual activity sought to be controlled is presumably otherwise unlawful and such laws may be enforced to control illicit sexual activity when and where it occurs. Finally, the Court believes this determination to be in accord with *City of Cincinnati v. Correll,* 141 Ohio St. 535, 49 N.E.2d 412 (1943) wherein the Ohio Supreme Court held a municipal ordinance restricting the hours of operation of barbershops unconstitutional as a matter of state law.

■ Section 540.11(A)(5) requires that records be maintained, including the names of all massage patrons, and that such records be subject to inspection. The inspection provision will be discussed hereinafter together with § 540.11(A)(7). The Court finds the record-keeping requirement must be held to be invalid for several reasons.

First, this provision denies equal protection through an arbitrary classification of businesses. The only reasonable relationship such records would have to enforcement of Chapter 540 is the defendants' ability to identify patrons in order to question them concerning the services that they received. The Court is unaware of, and counsel have not indicated, any record-keeping burden imposed on similar businesses. Restaurants, for example, are not required to keep records identifying their customers

and the food which they consume, although such records could be used to aid in the enforcement of laws governing the preparation and service of food. Barbershops are not required to keep records although such records might be useful in the enforcement of regulations applicable to them. Nor are records of theater patrons maintained to insure enforcement of laws prohibiting obscene theatrical performances. Although it may be reasonable to require the keeping of such records in limited circumstances such as the sale of inherently dangerous substances (e. g. narcotics and explosives), the Court finds no such justification to exist in this case. The record-keeping burden is imposed on massage establishments without any rational basis for distinguishing this business from many which are free from such a burden.

Second, the Court finds this provision to have a chilling effect on the First Amendment freedom of association. The defendants contend that the plaintiffs lack standing to assert this claim since it is the customer who would reasonably be deterred. The deterrence of customers from plaintiffs' businesses would, however, have a direct adverse impact on the massage establishment, through loss of business. Thus, the plaintiffs have standing. The Court finds that a requirement that massage patrons identify themselves in a written record (the purpose of which may be unknown to them) in order to receive a massage has a reasonable likelihood of deterring persons, for entirely innocent reasons, from seeking a lawful massage. The defendants have failed to show any compelling concern which would justify this interference with the fundamental constitutional right of free association. *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

■ Finally, the Court believes this provision to run afoul of Article I, Section 19, of the Ohio Constitution. See, *Direct Plumbing Supply Co. v. City of Dayton,* 138 Ohio St. 540, 38 N.E.2d 70 (1941). There the Ohio Supreme Court held invalid an ordinance which required that records be kept of the identity of purchasers of plumbing fixtures.

■ Chapter 540 also purports to authorize the warrantless and unannounced inspection of massage establishments during business hours by police officers, health inspectors and inspectors from the Section of Licenses. Section 540.11(A)(5) and (7) require that the establishment and its records be subject to inspection as a condition of operation and § 540.06(A)(4) makes the refusal of inspection a ground for denying issuance or renewal of a license or for revoking or suspending a license. In *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) the Supreme Court held the warrant procedure of the Fourth Amendment relative to housing code inspections, *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) equally applicable to private commercial premises. In *See* the Court did not question "such accepted regulatory techniques as licensing programs which require inspections prior to operating a business." 387 U.S. at 546, 87 S.Ct. at 1741. Nor does this Court question the city's ability to require an inspection as a condition precedent to the issuance of a license and "prior to operating a business." Once an inspection has been had and a license issued, however, the Court believes that further searches require a warrant absent consent. The Court does not find the regulation of massage establishments to be "deeply rooted" in government control as the Supreme Court found with respect to firearms in *United States v. Biswell,* 406 U.S. 311, 315, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). Nor does the Court find that the prerequisite of a warrant would frustrate the purpose of the inspection as was the case in *Biswell.* In *Biswell* the Supreme Court discussed *See,* stating that:

Periodic inspection sufficed, and inspection warrants could be required and privacy given a measure of protection with little if any threat to the effectiveness of the inspection system there at issue. 406 U.S. at 316, 92 S.Ct. at 1596.

This reasoning is equally applicable to massage establishments.

While the Court recognizes that the instant case presents a factually distinct situation from both *See* and *Biswell,* a balancing of the private and governmental interests requires that the warrant procedure be required here as it was required in *See.* Fundamental rights under the Fourth Amendment are involved and the defendants have shown no compelling interest justifying the intrusion.

*Sections 540.12–540.16*

Upon review, the Court finds no constitutional infirmities in §§ 540.12 through 540.-16. The Court notes and recognizes the validity of the severability provision in § 540.16. The Court's ruling today does not emasculate Chapter 540 or leave it without legitimate purpose. Thus, with the exception of those provisions expressly held invalid, Chapter 540 is lawful and may be enforced.

## III

For the foregoing reasons it is ORDERED, ADJUDGED and DECREED that the following provisions of Chapter 540 of the Columbus City Code are contrary to law, and that the defendants, their agents, employees and all those acting in concert with them be, and they hereby are, permanently enjoined from enforcing any such provisions in any way:

1. Section 540.04(C) with respect to limited partners and stockholders.
2. Section 540.05(A)(2).
3. Section 540.06.
4. Section 540.07(B)(7).
5. Section 540.08(A)(1).
6. Section 540.09.
7. Section 540.11(A)(4).
8. Section 540.11(A)(5).
9. Section 540.11(A)(7).