**INTERSTATE TOWING ASSOCIATION, INC., et al., Plaintiffs,**

v.

**CITY OF CINCINNATI, et al., Defendants.**

No. C–1–90–698.

United States District Court, S.D. Ohio, W.D.

June 15, 1992.

Brett Colbert Goodson, Kimpel, Hyland, Weinkam & Good, Cincinnati, Ohio, Michael P. McGovern, Knoxville, Tenn., for plaintiffs.

James Francis McCarthy, III, Mary Fay Danner Dupuis, City of Cincinnati, Cincinnati, Ohio, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPIEGEL, District Judge.

The plaintiffs allege that Chapter 869 of the Cincinnati Municipal Code, as applied to consensual tows by towing firms whose primary place of business is located outside the City of Cincinnati, has been preempted by federal law, places an unreasonable burden on interstate commerce in violation of the Commerce Clause, is arbitrary and unreasonable in violation of the Due Process Clause, and is discriminatory in violation of the Equal Protection Clause. Chapter 869 regulates towing services provided within the City of Cincinnati.

This Court conducted a trial in this matter on May 13, 1992. For the reasons set forth below, the Court concludes that the Cincinnati towing ordinance is not unconstitutional on its face or as applied to these plaintiffs.

In rendering our decision on the merits of this matter, we have considered the testimony and exhibits offered at trial, the plaintiffs' and the defendants' proposed findings of fact and conclusions of law, and the plaintiffs' and the defendants' supplemental proposed findings of fact and conclusions of law. In weighing the testimony of the witnesses, we considered each witness' relationship to the plaintiff or the defendant; their interest, if any, in the outcome of the trial; their opportunity to observe or acquire knowledge concerning the facts about which they testified; and the extent to which they were supported or contradicted by other credible evidence.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, we set forth our findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. Plaintiff Interstate Towing Association ("ITA") is a non-profit trade association representing the interests of automotive towing firms holding certificates of authority from the Interstate Commerce Commission; Plaintiff Towing and Recovery Association of Kentucky ("TRAK") is a non-profit trade organization representing the interests of automotive towing firms in the Commonwealth of Kentucky; Plaintiff Tri-State Towing Association is a non-profit trade organization representing the interests of automotive towing firms in the tri-state area of Kentucky, Indiana and Ohio; Plaintiff Al's Towing is an automotive towing business located in Covington, Kentucky.

2. The City of Cincinnati is a municipal corporation organized and existing under the constitution and laws of the State of Ohio.

3. Cincinnati City Council enacted Cincinnati Municipal Code Chapter 869 which regulates the business of using a wrecker or other vehicle to remove parked or disabled motor vehicles from any street or property located in the City of Cincinnati. Cincinnati Municipal Code § 869-7.

4. Chapter 869 requires a towing operator to obtain a license (called a "T-sticker") in order to engage in the business of towing vehicles from Cincinnati streets or property.[1] Cincinnati Municipal Code § 869-7.

5. The ordinance exempts towing operators whose place of business is more than twenty-five miles outside the Cincinnati corporate limits and are subject to and have complied with the United States Department of Transportation safety regulations. Cincinnati Municipal Code § 869-7. The ordinance further exempts towing operators who use their wreckers exclusively for towing or moving their own property. Cincinnati Municipal Code § 869-7.

6. To obtain a T-sticker, an applicant must: (a) file an application; (b) furnish proof of not less than $300,000 of general liability insurance which contains an endorsement providing 10 days notice by the insurer to the City of Cincinnati prior to any material change or cancellation; (c) tender all applicant vehicles to the City impound yard for inspection; (d) post a $5000 bond; (e) pay an $80 per wrecker fee; and (f) comply with regulations promulgated pursuant to the ordinance.

---

**1.** Section 869-7 of the Cincinnati Municipal Code provides in pertinent part:

No wrecker or towing operator shall engage in the business of offering towing services by use of a wrecker or similar vehicle by removing parked or disabled motor vehicles from any street, or property, whether public or private, located in the city of Cincinnati, unless a license is obtained from the city treasurer for each place of business operated by the wrecker or towing operator. This includes those operators both with and without the corporate limits of the city of Cincinnati.

No licensee shall operate a wrecker or automobile used for towing purposes to remove parked or disabled motor vehicles from any street, or property, whether public or private, located in the city of Cincinnati and towing them over the streets of Cincinnati, unless a license sticker is obtained from the city treasurer for such wrecker or automobile.

7. Each T-sticker is valid for one year.

8. To successfully complete the application process, the applicant must bring the tow truck to the Cincinnati impoundment facility for a vehicle and equipment inspection before the T-sticker can be placed on the tow truck windshield.

9. To obtain a T-sticker, an applicant must incur expenses for the per truck license fee, equipment down-time, driver time, fuel expense, administrative and clerical labor, and the cost of the bond.[2]

10. In addition to the Cincinnati ordinance, there are Federal Motor Carrier Safety Regulations ("FMCSRs"), 49 C.F.R. 387 and 390–399.

11. The FMCSRs apply to for-hire motor carriers transporting property in interstate commerce which have a gross vehicle weight of 10,000 pounds or more. 49 C.F.R. § 387.3(a) and (c) (1991).

12. All tow trucks subject to the FMCSRs must be inspected at least annually by an inspector qualified pursuant to 49 C.F.R. § 396.17 and inspected daily pursuant to 49 C.F.R. § 396.11.

13. Pursuant to 49 C.F.R. § 387 motor carriers (including tow trucks) must maintain at least $750,000 in liability insurance.

14. To obtain a T-sticker, those tow truck operators not exempt from the Cincinnati ordinance must comply with the ordinance regardless of whether or not they comply with the FMCSRs.

15. In establishing the twenty-five mile boundary, the City reasoned that: (a) the Cincinnati T-sticker requirement must have some outer geographic boundary; (b) towing firms located farther away from the City are less likely to tow vehicles from Cincinnati property; and (c) towing firms located more than twenty-five miles outside the City are more likely to travel to Cincinnati on an interstate highway where they will be subject to inspection at state weigh stations enforcing the FMCSRs. Tow operators within the twenty-five mile boundary, even if they travel briefly by interstate highway, are less likely to pass a state inspection station.

16. The plaintiffs in this action challenge the constitutionality of Cincinnati Municipal Code Chapter 869 as it applies to consensual towing services[3] performed by towing firms whose primary business operations are located outside the City of Cincinnati but within twenty-five miles of the city limits.

17. The plaintiffs admit that Chapter 869 is constitutional as applied to tow truck operators whose business is located within the City, operators who perform non-consensual tows within the City (e.g. where vehicles are impounded), and tow operators on the City's police rotation.

## CONCLUSIONS OF LAW

I. Federal Preemption

1. The United States Court of Appeals for the Sixth Circuit reiterated the test for determining whether federal law has preempted state legislation as follows:

> The Supremacy Clause of Art [sic] VI of the Constitution provides Congress with the power to pre-empt state law. Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

---

2. Insurance premiums do not constitute an additional expense because the vast majority of tow trucks are subject to federal law which requires them to carry more insurance than the Cincinnati ordinance requires. *See* 49 C.F.R. 387.

3. For purposes of this opinion, "consensual towing" includes tows performed by a particular towing firm at the request of the owner or operator of the vehicle or at the request of an automobile club or similar organization on behalf of the vehicle owner.

*Norfolk & Western Ry. v. Public Utilities Commission*, 926 F.2d 567, 569 (6th Cir. 1991) (quoting *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986)).

2. "The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *Id.* at 570 (quoting *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. at 369, 106 S.Ct. at 1899).

■ 3. In enacting the Federal Motor Carrier Safety Act, 49 U.S.C.App. § 2501 *et seq.*, Congress did not intend to pre-empt state law nor did it legislate comprehensively so as to occupy the entire field of regulation. *Specialized Carriers & Rigging Assoc. v. Virginia*, 795 F.2d 1152, 1155–56 (4th Cir.1986). In fact, there are several code sections that appear to specifically contemplate supplemental state or local regulation. For example, 49 U.S.C.App. § 2506 and § 2507 provide a procedure for federal review of state laws. 49 U.S.C.A.App. § 2506 and § 2507 (Supp. 1992). Further, 49 U.S.C. § 2302 permits grants to states who will assume responsibility for enforcing the federal laws or compatible state rules and regulations. 49 U.S.C.A.App. § 2302(a) and (b) (1992 Supp.). Finally, the regulations promulgated under the Federal Motor Carrier Safety Act specifically provide:

> Except as otherwise specifically indicated, subchapter B of this chapter is not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the person subject thereto.

49 C.F.R. § 390.9 (1991).

■ 4. There is no conflict between the Federal Motor Carrier Safety Act and the Cincinnati ordinance at issue in this case; nor is it physically impossible to be in compliance with both federal law and Cincinnati Municipal Code Chapter 869. The Federal Motor Carrier Safety Act applies to all vehicles (with certain exceptions not relevant here) engaged in interstate commerce with a gross vehicle weight of 10,000 pounds or more. 49 C.F.R. § 387.3(a) and (c) (1991). The Act is intended to ensure the safe operation of commercial motor vehicles. *See* 57 Fed.Reg. 13,572 (April 16, 1992). Cincinnati Municipal Code Chapter 869 applies only to those operators engaged in the business of towing vehicles from property in Cincinnati. It applies only to tow trucks, and exempts operators who tow only their own vehicles or whose business is located more than 25 miles outside the City of Cincinnati. Both the federal laws and the Cincinnati ordinance are intended to promote safety in the operation of certain commercial motor vehicles. Both require inspections, and both require the operator to maintain liability insurance. Although the inspections are not identical and the Cincinnati ordinance requires a lesser amount of insurance and an additional bond, nothing in the Cincinnati ordinance precludes compliance with the federal laws.

5. The plaintiffs seem to contend that the Cincinnati ordinance is less stringent than the federal laws, and should therefore be obviated. Such an argument is properly reviewed by the Secretary pursuant to 49 U.S.C.App. § 2507. The role of this Court is to determine whether the Federal Motor Carrier Safety Act preempts Cincinnati Municipal Code Chapter 869. We conclude that it does not.

II. Commerce Clause

■ 6. The Commerce Clause mandates that trade must generally remain free from excessive state interference. *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 669, 101 S.Ct. 1309, 1315, 67 L.Ed.2d 580 (1981).

7. However, "[I]n the absence of conflicting legislation by Congress, there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." *Id.* at 669, 101 S.Ct. at 1316 (quoting *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 767, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915 (1945)).

8. Indeed, "regulations that touch upon safety—especially highway safety—are

those that 'the Court has been most reluctant to invalidate.'" *Id.* 450 U.S. at 670, 101 S.Ct. at 1316 (quoting *Raymond Motor Transportation, Inc. v. Rice,* 434 U.S. 429, 443, 98 S.Ct. 787, 795, 54 L.Ed.2d 664 (1978)).

9. Where the state or local statute "does not discriminate between interstate and intrastate commerce, the controlling question is whether the incidental burden imposed on interstate commerce by [the ordinance in question] is 'clearly excessive in relation to the putative local benefits.'" *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 472, 101 S.Ct. 715, 728, 66 L.Ed.2d 659 (1981) (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)).

■ 10. In the case at bar, the Cincinnati towing ordinance does not discriminate between interstate and intrastate commerce. Although Cincinnati is located near Kentucky and Indiana (and therefore the ordinance affects towing operators in Ohio, Kentucky and Indiana), the statute does not discriminate. Ohio tow operators located 24.9 miles to the north of Cincinnati are treated the same as Kentucky operators located 24.9 miles to the south of Cincinnati and Indiana operators located 24.9 miles to the west of Cincinnati. This Court has no doubt that tow operators located outside the city limits suffer greater inconvenience in obtaining a T-sticker than tow operators located within the city limits simply because it takes time and money for them to bring their wreckers to Cincinnati for inspection and application of the T-sticker. However, Ohio tow operators located outside the city limits suffer the same inconvenience.

11. The issue, then, is whether the burden the Cincinnati T-sticker law places on interstate commerce is clearly excessive when compared to the local benefits of the law. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. at 472, 101 S.Ct. at 728.

12. The Cincinnati towing ordinance is limited by its terms to those engaged in the business of removing parked or disabled vehicles from a place within the City of Cincinnati where they have been parked or disabled. The towing ordinance is intended to promote traffic safety, provide consumer protection, protect citizens from criminal activity, and to regulate business on Cincinnati streets. This Court heard testimony at trial from several conscientious, reputable tow operators who would conduct their business in Cincinnati appropriately and professionally even without the ordinance. However, there are undoubtedly other operators who use unsafe wreckers, unnecessarily block city streets, and provide poor service for extreme prices. Further, tow operators whose trucks have a gross vehicle weight less than 10,000 pounds or who purposely avoid officials who monitor compliance with the Federal Motor Carrier Safety Act will not otherwise be detected before engaging in business in Cincinnati. Therefore, the Cincinnati tow ordinance is a legitimate exercise of the City's power to protect its citizens and regulate business on City property.

13. Further, the incidental burden and inconvenience the Cincinnati tow ordinance imposes on interstate commerce cannot be said to be clearly excessive when compared to the benefits the ordinance reaps.

14. Accordingly, the Cincinnati tow ordinance does not violate the Commerce Clause.

### III. Due Process and Equal Protection

■ 15. To overcome a Fourteenth Amendment challenge, non-discriminatory municipal legislation must bear a reasonable relationship to the protection of a legitimate governmental goal. *Pentco, Inc. v. Moody,* 474 F.Supp. 1001 (S.D.Ohio 1978).

16. This Court explained above that the Cincinnati towing ordinance does not discriminate against out-of-state tow operators.

■ 17. The plaintiffs in this case do not challenge the City's legitimate interest in licensing towing businesses, wherever located, engaged in non-consensual towing or in regulating any towing business with a principle business location within the Cin-

cinnati city limits. They challenge only the application of the ordinance to tow operators located outside the city but within 25 miles of the city who perform strictly consensual tows.

18. This Court must conclude that the Cincinnati tow ordinance bears a reasonable relationship to the City's legitimate governmental interest in regulating *all* tows from within the City. Even where the owner or operator of a disabled vehicle chooses his own tow operator, the City of Cincinnati has a legitimate interest in ensuring that the wrecker that will tow the disabled vehicle from the city streets is in safe condition and properly equipped. Further, the towing ordinance protects the Cincinnati citizens who come in contact with the towing operator on the public streets by requiring tow truck operators to be financially responsible and to operate with safe equipment.

19. Further, in establishing the twenty-five mile boundary, the City reasoned that: (a) the Cincinnati T-sticker requirement must have some outer geographic boundary; (b) towing firms located farther away from the City are less likely to tow vehicles from Cincinnati property; and (c) towing firms located more than twenty-five miles outside the City are more likely to travel to Cincinnati on an interstate highway where they will be subject to inspection at state weigh stations enforcing the FMCSRs. Tow operators within the twenty-five mile boundary, even if they travel briefly by interstate highway, are less likely to pass a state inspection station. Therefore, this Court must conclude that there is a reasonable relationship between the twenty-five mile exemption boundary and the City's legitimate interest in protecting its citizens.

20. The plaintiffs make much of the fact that city officials often enforce the ordinance on the tip of other T-sticker holders who witness a non-T-sticker holder towing vehicles in Cincinnati. Such a course of events does not even approach the sort of selective enforcement barred by the Constitution. There is no evidence or even allegation that Cincinnati Police respond to tips regarding out-of-state tow operators but ignore tips regarding Cincinnati tow operators who violate the ordinance.

21. Accordingly, the Cincinnati tow ordinance does not violate the Fourteenth Amendment.

## CONCLUSION

For the reasons set forth above, this Court hereby finds that the Cincinnati towing ordinance is neither unconstitutional on its face nor unconstitutional as applied to these plaintiffs.

SO ORDERED.