**MARX v. MAYBURY, State Director of Licenses of Washington, et al.**

District Court, W. D. Washington, N. D. February 11, 1929.

No. 643.

E. D. Phelan, of Seattle, Wash., for plaintiff.

John H. Dunbar, Atty. Gen., L. B. Donley, Asst. Atty. Gen., Ewing D. Colvin, Pros. Atty., and Arthur M. Hare, Deputy Pros. Atty., both of Seattle, Wash., for defendants.

Before RUDKIN and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge. Plaintiff filed a bill of complaint in equity, praying that defendants be restrained from enforcing a certain act of the Legislature of the state of Washington, commonly spoken of as the "Barber Law," being chapter 75, p. 229, of the Laws of 1923, as amended by chapter 211, p. 315, of the Laws of 1927, "An act relating to the practice of the occupation of barber, providing for the examination and licensing of barbers, and apprentices and students and the operation of barber schools or colleges, prescribing penalties," etc.

Plaintiff alleges that he is a skilled barber, and makes his livelihood by following the barber trade, and that he has not other means of making a livelihood; that he is trained as an instructor in barber colleges, and has a barber college in the city of Seattle; that he owns and operates barber shops in said city separate and apart from the barber school. Plaintiff further alleges that section 11 of said act (as amended by Laws Wash. 1927, p. 319, c. 211, § 8), among other things provides "that not more than one student or apprentice shall be employed in any one barber shop"; that plaintiff has students that he desires to employ in the same shop.

Plaintiff further alleges that section 14 (as amended by Laws Wash. 1927, p. 321, c. 211, § 11), among other things, provides that "no barber school or college shall be issued a permit by the director of licenses unless such school or college requires   *   *   *   as a prerequisite to graduation a course of instruction of not less than one thousand hours to be completed within six months of not more than eight hours in any working day, such course of instruction to include the following subjects: Scientific fundamentals for barbering, hygiene, bacteriology, histology of the hair, skin, nails, muscles and nerve structure of the head, face, and neck, elementary chemistry relating to sterilization and antiseptics, diseases of the skin, hair, glands, and nails, massaging and manipulating the muscles of the upper body, hair cutting, shaving and arranging, dressing, coloring, bleaching and tinting the hair"; that plaintiff is required to have a permit to operate

his barber school, to teach the subjects designated, and that the students so taught cannot practice their trade until they have passed an examination on the subjects designated in the law.

It is further alleged that defendants will enforce the provisions of the statute unless restrained from so doing, and that thereby plaintiff will be deprived of his right to earn a livelihood by following his lawful trade, in violation of the Constitution of the United States, and particularly the Fourteenth Amendment thereof. It is further alleged in the complaint that the provisions of the statute are unreasonable and unnecessary, and that "in truth and in fact the so-called sanitary and health provisions of the law are to be administered by barbers and others totally unskilled and untrained in matters pertaining to public health and sanitation, and that, but for said pretended law, the barber shops in the state of Washington would be properly inspected and supervised by the health department of the state of Washington and the health departments of the various counties and cities in said state, all of which said departments are under the direction and control of skilled physicians and others particularly trained to safeguard and protect the health of the public."

Plaintiff attacks the entire statute, a copy of which is made a part of the complaint, as being in contravention of the Constitution, but we think it unnecessary to consider the act, other than in respect to those particular provisions complained of as affecting his right of earning a livelihood and conducting a lawful business. The matter is presented to the court upon defendants' motion to dismiss.

The provisions in question can only find support in that they are an exercise of the police power of the state in the interest of the public health. That the occupation of barber, by reason of its contact with portions of the human body, may afford an appropriate subject for reasonable health or sanitary regulations, for the purposes of this case, may be conceded. It would be more appealing to a court, called upon to protect the asserted constitutional rights of the individual against an alleged unlawful invasion thereof, if such regulations, asserted to be made in the interest of the public health, were to be administered by the usually recognized qualified health authorities, rather than by persons engaged in a trade or occupation not presumed to have any special qualifications in that respect, further than acquired in the ordinary learning or plying such trade

or occupation, or, as appears from this statute, to be left in the hands of the director of licenses.

In Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205, the Supreme Court of the United States, dealing with the subject of the police power, among other statements, said: "It does not at all follow that every statute enacted ostensibly for the promotion of these ends, is to be accepted as a legitimate exertion of the police powers of the state. There are, of necessity, limits beyond which legislation cannot rightfully go. While every possible presumption is to be indulged in favor of the validity of a statute, Sinking Fund Cases, 99 U. S. 700, 718 [25 L. Ed. 496], the courts must obey the Constitution rather than the law-making department of government, and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed. * * * The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

In Baker v. Daly (D. C.) 15 F.(2d) 881, Bean, District Judge, speaking for a statutory court, considering a law of the state of Oregon known as the "Cosmetic Therapy Law" (Laws 1925, p. 99), said: "This constitutional provision has been declared by the Supreme Court to mean, 'not only the right of the citizen to be free from mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation.' Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832; Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446. The right thus granted is, of course, subject to the police power of the state to enact laws essential to the public safety, health, or morals; but, to justify a state in exercising such authority, it must appear that the interest of the public

requires such interposition, and that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive to individuals. 'The Legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business, or impose undue and unnecessary restrictions upon lawful occupations.' Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385."

If the limiting of the number of apprentices to one to each barber shop, whether the number of barbers in a particular shop be one, or a dozen, or more, has even a remote bearing upon public health, it is so remote we are unable to see it. We think it an unreasonable and arbitrary interference with the liberty of the citizen. That the practice of barbering by apprentices does not necessarily imperil the public health or safety the Washington Legislature recognizes, for by the act under consideration such practice is expressly authorized. That being true, the only conditions that may lawfully be imposed upon the practice are such as fall within the principles we have stated. If, as contended, apprentices may reasonably be required to work under the supervision of an experienced barber, no one has suggested why, if two such barbers operating separate shops can efficiently supervise two apprentices, they cannot as well exercise the same supervision when all four are working in the same shop.

Section 14 sets forth an imposing array of subjects to be covered by a course of instruction in barber schools and colleges. Doubtless the Legislature did not intend that the student, in his "course of instruction of not less than one thousand hours to be completed within six months," should master more than some rudiments of hygiene, bacteriology, diseases of the skin, hair, glands, nails, etc. It may be that this course of instruction is not intended to do more than enable the graduate to successfully pass an examination such as that prescribed in section 5 in cases of persons from other states applying "to practice the occupation of barber." It is provided in that section that such an applicant "shall be examined as to his skill in properly performing all the duties of a barber, including his ability in the preparation and care of the tools used, shaving, cutting of the hair and beard, and all the various services incident thereto, and as to his knowledge of sanitation as applied to the occupation of barbering and as to whether he has sufficient knowledge concerning the common diseases of the face and skin to avoid the aggravation and spreading thereof in the practice of the occupation of barber."

While the section is indefinite as to the extent of knowledge to be acquired in these various subjects, further than may be indicated by the time provisions, or possibly as indicated by the provisions of section 5 (Laws Wash. 1923, p. 230, c. 75), the director of licenses would have difficulty in determining when and when not a permit should issue to a school or college which must be prepared to impart such instruction. If the director of licenses should not himself be a qualified judge of such matters, possibly it was intended to be assumed he would call on members of the occupation or the health authorities for advice.

While section 14 on its face appears to make elaborate provision to guard the health of patrons of barber shops, it is difficult to avoid the impression that its practical effect is to limit the number of barber schools or colleges, and the number of students, graduates, or apprentices. What, if any, reason could exist why the course is "to be completed in six months," is not apparent. Nor is it apparent how the public health is to be protected by the age restrictions. The entire section, we think, has no real or substantial relation to the public health, is unreasonable and unnecessary, and an invasion of rights secured by the Constitution.

Without expressing an opinion on other provisions of the act, it follows that the motion to dismiss should be overruled. Plaintiff is entitled to an injunction restraining defendants from interfering with the number of student apprentices which he may employ in any one barber shop, and from enforcing against him the provisions of section 14 of the act in question.

It is ordered that an injunction issue accordingly.