[No. 44094.   En Banc.   December 30, 1976.]

WASHINGTON MASSAGE FOUNDATION, ET AL, *Respondents*, v. JACK G. NELSON, ET AL, *Appellants*.

*Slade Gorton, Attorney General,* and *Edward H. Southon, Assistant,* for appellants.

*James V. Grubb,* for respondents.

*Robert E. Schillberg, Prosecuting Attorney for Snohomish County,* and *Richard S. Lowry, Deputy,* amici curiae.

BRACHTENBACH, J.—This appeal involves the constitution-

ality of two provisions of Laws of 1975, 1st Ex. Sess., ch. 280, codified as RCW 18.108. That statute concerns the licensing and regulation of massage businesses and operators.

In the trial court, respondents challenged the constitutionality of numerous sections of the law. The court ruled that two sections were unconstitutional in that they authorized warrantless administrative inspections in violation of U.S. Const. amend. 4, but upheld other challenged sections. The trial court, finding the two sections to be severable, entered a degree permanently enjoining appellants from enforcing RCW 18.108.180 and RCW 18.108.190. Respondents have not cross-appealed the ruling that the other challenged sections are constitutional. We affirm.

Administrative agencies at all levels of government have important responsibilities of protecting the public health, safety, and welfare. One of the devices by which these responsibilities are carried out is administrative inspection. Under this system, agency representatives make periodic physical inspections of the regulated premises to determine whether a violation exists. Such inspections are considered to be essential to adequate enforcement of valid governmental regulation. Nonetheless, they are official intrusions. Thus, a tension exists between the Fourth Amendment's protection of the privacy and security of individuals against arbitrary intrusions by government officials and the public interest in inspection.

In two 1967 cases, the United States Supreme Court dealt with the question of warrantless administrative inspections of private premises for municipal code violations. *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967); *See v. Seattle*, 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967).

In *Camara*, the lessee of an apartment was charged with violating a city housing code for refusing an inspector access during a routine annual inspection. The court started from the premise that:

[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is "un-

reasonable" unless it has been authorized by a valid search warrant.

(Citations omitted.) *Camara v. Municipal Court, supra* at 528-29. At pages 532-33, the court emphasized the prohibition against leaving the citizen's rights subject to the unfettered discretion of the official in the field, concluding:

> We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review, particularly when those safeguards may only be invoked at the risk of a criminal penalty.

*Camara v. Municipal Court, supra* at 533.

Finally, the court found that in area code-enforcement inspections, the nature of protection required by the Fourth Amendment was not as stringent as required in cases of searches for criminal evidence. To obtain a warrant, it would not be necessary for the government to show there was probable cause that a specific code violation existed on the particular premises. Instead, the warrant could be issued if the government presented reasonable administrative standards evidencing a need to inspect a particular section of the city and that particular building fell within those standards.

The companion case to *Camara* was *See v. Seattle, supra.* Here, the court extended the *Camara* holding to area inspections of business premises. However, the court cautioned that

> We do not in any way imply that business premises may not reasonably be inspected in many more situations than private homes, nor do we question such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product. Any constitutional challenge to such programs can only be resolved, as many have been in the past, on a case-by-case basis under the general Fourth Amendment standard of reasonableness.

*See v. Seattle, supra* at 545-46. The court thus left the way open for some exceptions to the *Camara-See* rule.

The first inroad into the *Camara-See* rule came in *Colon-*

*nade Catering Corp. v. United States,* 397 U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774 (1970). Colonnade was the holder of a state liquor license and holder of a federal liquor dealer's tax stamp. Federal statutes provided that tax agents could inspect such businesses during business hours for the purpose of inspecting the liquor and the business books which the statute required be kept. But upon visiting Collonnade, federal agents were refused entry into a locked storeroom, whereupon the agent broke the lock and removed bottles of liquor. The government sought to use these bottles as evidence in a subsequent trial.

Noting that the liquor business has historically been subject to close supervision and inspection, the court concluded that a warrant was not required before such an inspection as authorized by statute. However, the evidence was suppressed because the statute did not authorize forcible entries without a warrant.

The next and most recent decision of the court came in *United States v. Biswell,* 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (1972). The Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* (1971), authorizes official entry during business hours into the premises of firearm or ammunition dealers for the purpose of inspecting records required by the statute and firearms or ammunition kept or stored on the premises. A federal agent visited the respondent's licensed shop, inspected respondent's books and requested entry into a locked gun storeroom. Respondent asked whether the agent had a warrant; the agent said he did not but showed respondent the statute which authorized the inspection. The agent was then admitted into the storeroom and discovered rifles which respondent was not licensed to possess.

The court noted that the regulation of firearms was a valid governmental interest and that some type of inspection was necessary to effectuate the regulatory scheme. But this is equally true of the municipal code inspections involved in *See,* wherein the court required a warrant. However, the court distinguished *See* and ruled that Congress had the authority to authorize warrantless inspections of

federally licensed firearm dealers. In so holding, the court attempted to balance the governmental interest of regulation and the individual's interest in privacy. Without articulating the basis for its finding, the court concluded that frequent and unannounced inspections were necessary for effective enforcement. Thus, the court distinguished the fire inspection in *See* where conditions constituting a violation were relatively difficult to conceal or correct in a short time.

Furthermore, it would be impossible to establish a standard for obtaining a warrant which would offer any significant protection to the inspectee and still provide sufficient flexibility as to time, scope, and frequency to permit effective enforcement. The Congress had determined that probable cause to inspect existed independently of the circumstances of a particular case.

Finally, the search involved only limited threats to the individual's justifiable expectation of privacy. The dealer had chosen to engage in a pervasively regulated business and had accepted a federal license. Furthermore, the government furnished the licensee with a compilation of the statute so he was not left to wonder about the purposes of the inspector or the limits of his authority. This obviated the court's concern expressed in *Camara*.

Though a statute authorizing warrantless inspections is proven to be justifiable under the above criteria, the regulatory inspection must be carefully limited in time, place, and scope.[1] To allow otherwise would jeopardize the singular protection available against inspections unrelated to the lawful objectives of the regulatory scheme.

In summary, these four cases determine the nature of protection required by the Fourth Amendment in varying administrative inspection situations. The Fourth Amendment requires more individualistic safeguards of the citizen's privacy when an inspection statute is aimed at the physical condition and characteristics of a building rather

---

[1]*United States v. Biswell*, 406 U.S. 311, 315, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (1972).

than a particular business activity. In such situations, if the occupant does not consent to the inspection, the government must seek a warrant and establish probable cause via a reasonable legislative and administrative scheme. This balances the citizen's interest in privacy and the governmental interest in public health, safety and welfare and gives the occupant knowledge of the purpose, scope and authority of inspection.

However, when an industry or business is subject to extensive governmental regulation and frequent unannounced inspections are necessary to insure compliance, warrantless inspections are valid if authorized by a statute which sufficiently delineates the scope, time and place of inspection. And the authorized inspection must be relevant to the purposes of the statute, *i.e.*, in furtherance of the public interest in regulating particular conduct or conditions. Again this balances the competing interests and gives notice of the proper extent and nature of the inspection.

It is within the context of these United States Supreme Court cases that we review the statutes at issue. RCW 18.108.180 reads as follows:

> The director or any of his authorized representatives may at any time visit and inspect the premises of each massage business establishment in order to ascertain whether it is conducted in compliance with the law, including the provisions of this chapter and the rules and regulations of the director. The operator of such massage business shall furnish such reports and information as may be required.

RCW 18.108.190 reads as follows:

> State and local law enforcement personnel shall have the authority to inspect the premises at any time including business hours.

We have no historical basis for the regulation of the massage business nor did the act itself or evidence at trial state the public purpose to be served. But, assuming for the purposes of argument that the State could establish the necessity and justification for warrantless inspections of massage parlors, we would still find the two statutes above

to be violative of the Fourth Amendment. The two statutes authorize unreasonable searches because they fail to delineate adequate limitations on purpose, time, place or scope of the inspection.

The first statute, RCW 18.108.180, authorizes inspections at "any time". The purpose or allowable scope of the inspection is to determine whether the business "is conducted in compliance with the law"; apparently including but not limited to the laws of chapter 18.108. Presumably compliance with "the law" would include every applicable ordinance, statute, and regulation whether or not related to the purposes and necessities of RCW 18.108. This is too broad. And, the inspectee is to furnish "such reports or information as may be required". As such, the statute fails to give reasonable notice of the permissible scope of the inspection. Further, by failing to indicate the proper scope, the statute offers no guidelines concerning what physical items and areas of the business may be inspected.

The second statute, RCW 18.108.190, is even less instructive as to the authorized time, place or scope of inspection; it does not prescribe any standards by which the inspectee or a court could determine whether the particular inspection was authorized by the statute.

Though we have attempted to read these two statutes in relation to the other provisions of chapter 18.108, we find them to be too imprecise to convey sufficient notice of the proper time, place and scope of the inspection. The statutory scheme must give some indication of these factors. To allow otherwise would leave the inspectee subject to the unfettered discretion of the inspecting agency and individual inspector.

We have reviewed the federal and state court decisions which are in accord with *Biswell* and relied on by appellants but find them inapposite.[2] In none of these cases was

[2]*United States ex rel. Terraciano v. Montanye*, 493 F.2d 682 (2d Cir. 1974), *cert. denied*, 419 U.S. 875, 42 L. Ed. 2d 114, 95 S. Ct. 137 (1974); *Brennan v. Buckeye Indus., Inc.*, 374 F. Supp. 1350 (S.D. Ga. 1974); *Youghiogheny & Ohio Coal Co. v. Morton*, 364 F. Supp. 45 (S.D. Ohio 1973); *People v. Grey*, 23 Cal. App. 3d 456, 100 Cal. Rptr. 245 (1972);

the statute authorizing warrantless inspections so devoid of limitations on time, scope or place as the statutes at issue in this case.

Finally, we find the challenged sections to be severable from the remaining provisions of the act. *See Boeing Co. v. State*, 74 Wn.2d 82, 442 P.2d 970 (1968); *State v. Anderson*, 81 Wn.2d 234, 501 P.2d 184 (1972).

The judgment is affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, HOROWITZ, and DOLLIVER, JJ., concur.

*People v. White*, 259 Cal. App. 2d Supp. 936, 65 Cal. Rptr. 923 (Super. Ct. 1968).