■ In the Matter of 303 WEST 42ND STREET CORPORATION, Appellant, v JOSEPH B. KLEIN et al., Respondents.—Judgment, Supreme Court, New York County, entered on January 20, 1977, affirmed for the reasons stated by Spiegel, J., at Special Term, without costs and without disbursements. Concur—Kupferman, J. P., Lupiano and Lane, JJ.; Silverman and Evans, JJ., dissent in the following memorandum by Silverman, J.: In this article 78 proceeding petitioner appeals from a judgment of the Supreme Court, at Special Term, dismissing the petition on the papers, without an evidentiary hearing. The petition seeks to annul a determination of the New York City Board of Standards and Appeals which granted an application of the commissioner of buildings to modify the certificates of occupancy of petitioner's building so as to require that the building be fully sprinklered. For purposes of judicial review, the test of the validity of the board's action is whether it was "arbitrary and capricious or an abuse of discretion" (CPLR 7803, subd 3). Subsumed under that test is the question whether the actions of respondents (the board and the buildings commissioner) were in good faith and rational exercise of their discretion to correct a condition dangerous to public safety or whether they were based solely on a pretext that the condition was dangerous to public safety. *(Matter of Belle Harbor Realty Corp. v Kerr,* 35 NY2d 507, 512.) Petitioner had altered and let the basement, first floor, and mezzanine of the building to an organization called Show-World. The business of Show-World is apparently the exhibition and sale of sexually oriented motion pictures and books, i.e., a so-called "porno" movie and bookstore. It is the contention of petitioner that respondents' actions are merely a pretext to put Show-World out of business by imposing fire safety requirements, specifically full sprinklering throughout the building, that are so expensive and drastic that as a practical matter they cannot be met. It is important to recognize that petitioner and Show-World's operations may be objectionable on two separate grounds: (1) That the sexually oriented operations of Show-World legally can and should be stopped; and (2) that the building presents a fire hazard. Each of these objections may fairly be raised for decision on the merits. What cannot be done is to use the pretext that there is a fire hazard as a means of stopping Show-World's sexually oriented activities. For if that were permitted, then respondents buildings commissioner and the Board of Standards and Appeals would have the unreviewable power to determine what kinds of businesses and exhibitions may be conducted, and what kind may not be conducted, and even to stop a particular business or exhibition and permit a particular similar business or exhibition, even though there is no valid distinction between them. In *Matter of Belle Harbor Realty Corp. v Kerr* (35 NY2d 507, 511-512, *supra),* the Court of Appeals has thus stated the rule: "While we have consistently recognized the right of a municipality pursuant to its police powers to prevent conditions dangerous to public health and welfare * * * we have also insisted that any such restrictions or limitations must be kept 'within the limits of necessity.' * * * Consequently a municipality may not invoke its police powers solely as a pretext to assuage strident community opposition. To justify interference with the beneficial enjoyment of property the municipality must establish that it has acted in response to a dire necessity, that its action is reasonably calculated to alleviate or prevent the crisis condition, and that it is presently taking steps to rectify the problem. When the general police power is invoked under such circumstances it must be considered an emergency measure and is circum-

scribed by the exigencies of that emergency." I think that as to this "pretext" point, the present record raises questions of fact requiring exploration at an evidentiary hearing. Petitioner's building is described as a steel and concrete L-shaped 12-story office building. It is located partly on 42nd Street and partly on Eighth Avenue in the Borough of Manhattan, City of New York. The basic fire hazard upon which respondents rely for the requirement of full sprinklering is the fact that there is only one fire tower, i.e., one staircase and exit for the second to 12th floors. This is said to be a violation of subdivision 1 of section C26-603.2 of the Administrative Code of the City of New York. This condition has existed since the building was constructed, almost 50 years ago, in 1928. If it is a violation, it has been such at least since the adoption of the 1938 Building Code, and perhaps even under the 1916 Code in effect at the time the building was constructed. During the construction of the building in 1926, objection was made to the building plans in that, among other things, at least two stairways should be provided from each floor. But apparently the buildings department ultimately decided on all the facts to waive this requirement and issued a certificate of occupancy in 1928 certifying that the building conformed to the requirements of the Building Code. In October, 1974, the basement, ground floor, and mezzanine were leased to Show-World Center, Inc. Incident to that, building plans were filed for alteration of that portion of the premises and those building plans were approved in July, 1974. Those plans were later revised and re-revised and the revisions approved, including a requirement in or about April, 1975 by the buildings department for partial sprinklering of the two separate means of egress from the Show-World area. Petitioner, at considerable expense, made the alterations in accordance with the approved building plans. On July 28, 1975, the buildings department issued a temporary certificate of occupancy. Two months later, on September 25, 1975, the commissioner of buildings applied to the Board of Standards and Appeals to modify the certificates of occupancy so as to require that the building be fully sprinklered in accordance with section C26-600.3 of the Administrative Code. On March 9, 1976, the Board of Standards and Appeals approved the commissioner's application in the resolution which is here sought to be annulled. The petition alleges that between July, 1975 and October, 1975, city officials announced on television and in the press that they were engaged in a clean-up campaign to drive businesses exploiting sexually oriented material out of New York and that teams of fire, health, and building department inspectors would find as many violations as possible so as to be able to close down businesses in Times Square exhibiting sexually oriented material. The petition further alleges that the buildings commissioner was acting on orders from the Mayor's assistant, Mr. Sidney Baumgarten, who was said to be leading the clean-up campaign. The petition further alleges that in November, 1975, Mr. Baumgarten stated that the buildings commissioner was acting as part of the midtown task force clean-up campaign and that "Despite all the constitutional limitations, we stop at nothing when we try to put one of these placed out of business." Respondents' answer denies knowledge or information sufficient to form a belief as to whether these statements were made, and denies that the buildings commissioner's actions were part of this clean-up campaign. On the present state of the record, I think these allegations require exploration at an evidentiary hearing to determine, as in *Matter of Bell Harbor Realty Corp. v Kerr* (35 NY2d 507, 512, *supra)*, whether respondents' actions were based solely on a pretext that the building constituted a condition dangerous to public safety thus requiring full sprinklering. In that connection, while

respondents are not required to accept a particular alternative suggested by petitioner, it may be relevant to determine whether respondents did consider reasonable, less drastic alternatives " ' "within the limits of necessity" ' " (p 511). As in any claim of discriminatory enforcement, petitioner "will still have the heavy burden of showing that a pattern of discrimination has been consciously practiced against [it]." *(People v Goodman,* 31 NY2d 262, 269.) The judgment appealed from should be reversed, and the matter remanded to the Supreme Court for an evidentiary hearing to determine whether respondents' actions were arbitrary and capricious or an abuse of discretion, and particularly, whether they were based solely on a pretext that petitioner's building constitutes a condition dangerous to public safety.