[No. 48297–7.   En Banc.   February 16, 1984.]

OK YOP MYRICK, ET AL, *Appellants,* v. BOARD
OF PIERCE COUNTY COMMISSIONERS, ET AL,
*Respondents.*

*Herrmann, Levenson, Margullis & Buckley,* by *Charles J. Herrmann* and *James C. Buckley,* for appellants.

*Don Herron, Prosecuting Attorney, Karl D. Haugh, Senior Deputy,* and *Jill Guernsey–Walters, Deputy,* for respondents.

WILLIAMS, C.J.—On November 10, 1980, the Pierce County Board of County Commissioners passed Pierce County resolution 22518, amending chapter 50.16 of the Pierce County Code. Chapter 50.16, as amended, regulates the operation of massage businesses as well as the conduct of all massagists and masseurs in the county. The stated purpose of the comprehensive amendment was to eliminate the injurious effects upon the public health, safety and welfare caused by practices associated with massage businesses and "specific hands–on bodily contact". Pierce County Code 50.16.010 (as amended November 10, 1980). The County's move to impose stricter regulation upon such businesses was due primarily to the belief that these establishments were being used as fronts for illegal activities.

Pierce County resolution 22518.

The requirements of the new code included the following: (1) installation of an overhead fire sprinkler system; (2) the carrying of $300,000 liability insurance; (3) 100 hours of classroom instruction; (4) professional uniforms for attire; (5) doors not capable of being locked or blocked; and windows in doors; (6) recordkeeping of names and addresses of patrons; (7) prior convictions as disqualification for license.

Athletic coaches and trainers as well as beauticians and barbers providing neck massages were granted an exemption from these requirements. Pierce County Code 50.16-.040 (as amended November 10, 1980). Massagists and establishments holding licenses to operate on the effective date of the amendment were given 1 year to comply with any changes. Those persons and businesses not then holding valid licenses were to comply immediately upon the effective date. Pierce County Code 50.16.420 (as amended November 10, 1980).

On March 24, 1981, a group composed of owners of massage parlors, massagists and customers of massage businesses in Pierce County, the appellants herein, brought suit seeking declaratory and injunctive relief. They contended that the amendments to the code violated their rights to equal protection, privacy, due process, free association, and freedom from unreasonable searches and seizures. They also claimed that certain of the amendments were void for vagueness. By way of affidavits and a memorandum of law, appellants further claimed that the enumerated requirements were merely pretexts to close all massage parlors in the county.

The trial court, after reviewing the record of the county commissioners' proceeding, held that except for a provision allowing inspections, the amended chapter of the code comported with the constitution. Based upon this holding, appellants dropped the search and seizure issue. They did, however, continue to press the remainder of the constitutional challenges in an appeal to Division Two of the Court of Appeals. The Court of Appeals, finding that the case

involved fundamental and urgent issues of public importance, stayed enforcement of the amended chapter and certified the case to this court.

## I

■ In determining whether the challenged chapter of the Pierce County Code passes constitutional muster we apply the rational basis test. This minimum level of scrutiny is employed in cases which involve economic legislation, *Equitable Shipyards, Inc. v. State,* 93 Wn.2d 465, 611 P.2d 396 (1980), and in cases which involve neither a suspect classification nor a fundamental right. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 601 P.2d 936 (1979). Appellants in this case are not members of a suspect class. The interest they seek to protect, avoiding regulation of economic enterprises, is not fundamental. We must, therefore, examine the requirements of the amended chapter under this minimum level of scrutiny.

■ Use of this test involves a 3–step inquiry: "(1) Does the classification apply alike to all members within the designated class?" *Equitable Shipyards, Inc. v. State, supra* at 478. Under the facts of this case we answer this question in the affirmative. The chapter applies with equal force to all individual massagists and owners of massage businesses in the county. However, an affirmative answer of this inquiry does not spell an end to our examination. We must also determine (2) whether some basis in reality exists for reasonably distinguishing between those within and without the designated class, and (3) whether the challenged classifications have any rational relation to the purposes of the challenged statute. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs, supra* at 835–37. With the exception of the liability insurance, we answer these last two questions in the negative.

Initially, we note that the $300,000 liability insurance coverage provision is well within the regulatory power of the County and seems to mirror sound business judgment. The possibility of injury to patrons of these and other bus-

inesses would justify mandatory insurance levels to assure financial protection to those who may be injured on the premises.

We hold that the remaining requirements constitute unreasonable and therefore unconstitutional infringements upon the appellants' rights.

## II

That the County possesses the power to regulate the operation of massage establishments cannot be disputed. *See Washington Massage Found. v. Nelson,* 87 Wn.2d 948, 558 P.2d 231 (1976); *see generally* RCW 36.32.120(7). The exercise of this regulatory power, however, is not without limits. While it is recognized that every possible presumption is to be indulged in favor of the constitutionality of an ordinance, *Winkenwerder v. Yakima,* 52 Wn.2d 617, 624, 328 P.2d 873 (1958); *Spokane v. Coon,* 3 Wn.2d 243, 100 P.2d 36 (1940), this does not require us to uphold every measure ostensibly passed for the public's health, safety, and welfare. We must look to the constitution to determine if in a particular case a law reaches beyond reasonable limits. This inquiry demands an examination of more than the mere form of the measure; it requires an examination of its substance.

> The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. *If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."*

(Italics ours.) *Marx v. Maybury,* 30 F.2d 839, 840 (W.D. Wash. 1929) (quoting from *Mugler v. Kansas,* 123 U.S. 623, 661, 31 L. Ed. 205, 8 S. Ct. 273 (1887)).

The United States Supreme Court historically has

refused to allow any regulation to be used as a pretext or ruse to subvert or to injuriously restrain rights. *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). We have likewise consistently held that even "[l]egitimate objectives may not be pursued by means that needlessly chill the exercise of basic constitutional rights." *State ex rel. Brundage v. Eide,* 83 Wn.2d 676, 682, 521 P.2d 706 (1974). Applying these principles, we now proceed to an examination of the remainder of the challenged requirements.[1]

## A

### TWO–WAY VIEWING REQUIREMENT

Appellants contend that requiring 2–way viewing portals in massage parlor internal doors violates their rights of free association and privacy. We agree.

If the right of privacy offers any protection, that protection must include the right to be left alone. *Whalen v. Roe,* 429 U.S. 589, 51 L. Ed. 2d 64, 97 S. Ct. 869 (1977). Though this right is not absolute, any regulation infringing upon privacy interests must at least be reasonable. *State v. Meacham,* 93 Wn.2d 735, 738, 612 P.2d 795 (1980).

We note initially that other jurisdictions have held that the right of privacy does not extend to massage parlor operations. *See J.B.K., Inc. v. Caron,* 600 F.2d 710 (8th Cir. 1979); *Hilbers v. Anchorage,* 611 P.2d 31 (Alaska 1980). Those jurisdictions, however, dealt with facts decidedly different than those before us. In both *J.B.K., Inc.* and *Hilbers,* massage parlor operators claimed a right to engage in commercialized sexual activity by providing genital massages. These claims were found to be without merit. The appellants before us make no such claim. Rather, they question the effect the amended Pierce County Code would have upon the operation of legitimate businesses. As such, we will not follow holdings from these jurisdictions.

We recognize that unobstructed and unlocked doorways

---

[1]The full text of the challenged provisions of the Pierce County Code is set forth in the appendix to this opinion.

with 2–way viewing portals may have an effect upon illegal activity. But such a condition would also have a devastating impact upon society's legitimate and ever–increasing quest for physical fitness and upon the operation of legitimate massage businesses. Few persons, if any, would be willing to have an audience during a full body massage, however innocent and legitimate. Were we to find this requirement reasonable, there would exist no barrier to the imposition of similar requirements in wholly innocent family exercise studios, fitness centers, motel rooms, or other traditionally private places.

We do not undertake to define the full parameters of the right of privacy. Under the facts before us, it is sufficient to note that privacy "exists—like secrecy, security, or tranquility—by virtue of habits of life appropriate to its existence." Gross, *The Concept of Privacy,* 42 N.Y.U. L. Rev. 34, 36 (1967). Persons habitually have sought massages in private settings. Any regulation which is so broad in scope as to *require* public view of a massage would have a chilling effect upon individual privacy. This would not only infringe upon the rights of legitimate massagists to pursue a chosen occupation, *see Meyer v. Nebraska,* 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625, 29 A.L.R. 1446 (1923), but would also pose an impermissible threat to those persons seeking such services.

## B
### Recordkeeping Requirement

Like the requirement of 2–way viewing portals in doors, the recordkeeping requirement poses impermissible restraints upon individual rights—the rights of privacy and freedom of association. *See NAACP v. Alabama,* 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (1958). Because of this requirement entirely innocent persons would be reticent to patronize establishments which uniformly supply records of visits for police inspection. A similar scheme was considered and rejected as unconstitutional in *Pentco, Inc. v. Moody,* 474 F. Supp. 1001 (S.D. Ohio 1978). That court found that since no such requirement was imposed upon other public

businesses, the massage parlor owners were denied equal protection of the law. Further, the Ohio statute's record-keeping section was also found to present the strong likelihood of deterring even the law abiding from receiving massages. This deterrence was found to be contrary to *NAACP v. Alabama, supra. Pentco,* at 1008. It is one thing for persons to willingly supply names and addresses to businesses; it is quite another for a governing body to require disclosure. We adopt the *Pentco* reasoning to analyze and to ultimately strike down the recordkeeping requirement in this case.

■ Appellants' right of freedom of association is in no way diminished because the issue arises in an economic matter. The United States Supreme Court has "recognized the vital relationship between freedom to associate and privacy in one's associations." *NAACP v. Alabama, supra* at 462. Because of the importance of these tightly intertwined rights that Court has refused to draw a line excluding those "'engaged in business activities'" from the reach of the First Amendment. *Thomas v. Collins,* 323 U.S. 516, 531, 89 L. Ed. 430, 65 S. Ct. 315 (1945). *See also NAACP v. Alabama, supra.* We likewise refuse to do so and hold that compulsory disclosure of the names of persons frequenting these commercial establishments would constitute an impermissible abridgment of such rights.

## C
### Overhead Sprinkler System

Disregarding the stated purposes of eliminating injury from specific hands–on contact and curtailing illegal activity, the County argues that the overhead sprinkler system requirement is reasonable for purposes of fire prevention. No justification is given for requiring massage parlor operators to undertake the expensive task of retrofitting their establishments with sprinkler systems while allowing other businesses to remain unaffected by the requirement. A review of the record not only demonstrates the absence of any justification for this disparity of treatment among bus-

inesses, but also bodes against our finding the requirement reasonable. At trial the County stipulated to the fact that for 10 years prior to the passage of Pierce County resolution 22518 no fire occurred in a single massage parlor in the county. Additionally, at trial, the County relied solely upon the testimony of the county sheriff and vice squad officers to establish the reasonableness of the amendments. These persons testified to difficulty in policing massage parlors. This is not sufficient justification for disparity in treatment. This court adheres to the principle that difficulty in enforcement of laws and administrative expediency must give way to constitutionally protected interests. *See Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972). Though the constitution allows legislative bodies a certain amount of leeway in economic and business regulation, *see Williamson v. Lee Optical, Inc.,* 348 U.S. 483, 99 L. Ed. 563, 75 S. Ct. 461 (1955), different treatments among different classifications must nonetheless be justified. The County has failed to justify the imposition of this burden upon appellants.

## D
### Minimum Education Requirement

In support of the education requirement, it is argued that the appellant massagists should be compared with physical therapists and medical practitioners. There is, however, a distinct difference between massages given for relaxation and those given as treatment for ailments. With the latter, of course, educational standards should be set. With the former medical treatment is not a concern. Minimal standards in this setting are therefore unnecessary and unreasonable. One court has likened the relaxational massage to gestures of affection between husband and wife, which no court would presume to regulate. *Pentco,* at 1007. Based upon the *Pentco* comparison alone, this requirement must be stricken.

Moreover, after a careful examination of the classes of persons exempted from the minimum education requirements of the code, it becomes increasingly difficult to

believe that protection of the public's health is the true aim of the amendments. We must presume that the County prefers not to protect schoolchildren from the dangers inherent in specific hands–on contact from unskilled trainers. (In smaller schools trainers are more often than not students.) Similarly, patrons frequenting beauty shops and barbershops, no matter what the age, must run the risk of sustaining serious injury during untrained neck massages. Despite these dangers, Pierce County disregards the safety of these persons and instead would have this court support its efforts to "protect" sauna parlor patrons from even the minimal health risks caused by an unskilled *foot* massage. *See* Pierce County Code 50.16.020(F) (massage means any manipulation of "the external parts of the human body"). These shortcomings lend further credence to appellants' allegations that the true purpose of this law is to close the massage parlors. Under the *Yick Wo* line of cases we cannot uphold such a requirement.

### E
#### UNIFORM REQUIREMENT

Pierce County Code 50.16.230 requires persons employed as massagists to be "fully clothed, neat and clean" while on the premises. The problem with this section is that it fails to define the expression "fully clothed". For instance, would a person wearing a uniform consisting of swimwear be fully clothed? Would sleepwear or shorts suffice? The issue here is not whether the language of the provision could have been drafted with greater precision; the issue is whether the provision gives sufficient notice of what attire is required or forbidden.

A statute is void for vagueness under the Fourteenth Amendment if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Papachristou v. Jacksonville,* 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972); *State v. White,* 97 Wn.2d 92, 99, 640 P.2d 1061 (1982); *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603

(1975). The provision in this ordinance is defective because it fails to give fair warning of what manner of dress will run afoul of the law. The words "fully clothed" are insufficient to satisfy the due process clause and we must, therefore, invalidate this provision of the amended code.

## F
### PRIOR CONVICTIONS AS BASIS FOR REVOCATION OR SUSPENSION

The County argues that it is reasonable to allow automatic denials of licenses to persons convicted of certain crimes. We took a contrary position in *Seattle v. Bittner,* 81 Wn.2d 747, 505 P.2d 126 (1973). In that case, as part of licensing movie theaters, the City of Seattle passed a provision which would deny licenses to persons previously convicted of crimes involving moral turpitude or intent to defraud. Under that ordinance persons convicted of showing obscene movies were denied licenses. In striking down that provision, we noted: "Presumably an applicant who has been found guilty of showing an obscene motion picture has paid the penalty provided by law for that offense." *Bittner,* at 755. We further noted that the City proceeded under the unsupportable assumption that persons once convicted of such crimes were likely to commit the same offense again. We held: "Whether or not this assumption has any validity, we are convinced that the constitution does not permit a licensing agency to deny to any citizen the right to exercise one of his fundamental freedoms on the ground that he has abused that freedom in the past." *Bittner,* at 756.

*Bittner* involved the freedom of expression, operating a movie theater. That holding is nonetheless applicable in cases where no fundamental right is involved. In *Bittner* we relied upon our earlier opinion in *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 P. 845, 12 A.L.R. 1428 (1920). That case involved the denial of a business license to sell soft drinks and candy. We held it to be a violation of equal protection of the laws to withhold a license to engage

in legitimate business based upon criteria unrelated to the business.

In both *Bittner* and *Makris,* we noted that requiring standards of moral character in the professions of law, medicine, and teaching is permissible under the equal protection clause, because moral character is relevant to those activities. Such a circumstance is not present in this case. While we recognize that the County has the power to regulate in the interest of protecting the public safety and welfare, we cannot agree that imposing standards of moral character is in any respect related to preventing fire or health hazards. We therefore conclude that not only does the automatic denial of a license constitute a dual punishment for the same offense, but it also constitutes an unwarranted and unconstitutional invasion into the province of lawful commercial enterprise.

For the reasons set forth above, we reverse the trial court and, with the exception of the liability insurance, find the challenged requirements unconstitutional.

### APPENDIX

The following are the challenged provisions of chapter 50.16 of the Pierce County Code, in the order in which they appear in the opinion:

*50.16.320 Unobstructed openings in doorways required.* It is unlawful for any massage service to be carried on within any cubicle, room, booth, or any area within an establishment which is fitted with a door capable of being locked or capable of being barricaded or blocked in any manner while occupied by a massagist or employee and patron. All doors or doorway coverings within an establishment shall have an unobstructed two–way viewing into and out of all cubicles, rooms, or booths. The opening shall be not less than four and one–half feet from the floor of the establishment, nor more than five and one–half feet from the floor. Tables and cubicles used solely for the application of liquid and vapor baths shall have no such opening in the covering door or curtain, but shall be clearly marked as to purpose on the exterior door or curtain of said cubicle, room, or booth. Nothing contained herein shall be construed to eliminate other requirements of statute or ordinance concerning the maintenance of premises, nor to preclude authorized inspection thereof, whenever such inspection is deemed necessary by the sheriff or health department.

*50.16.360 Records.*

(A) The licensee and/or the person owning, operating, managing, or in charge of any establishment licensed pursuant to this chapter shall keep a daily record of all patrons utilizing the services given by or at such establishment. Such record shall include the following information:

(1) Date of the service;

(2) Time of the service;

(3) Patron's name and address;

(4) Type of service rendered;

(5) Name and address of the massagist or employee actually rendering such service; and

(6) Amount of money paid by each patron for the services, including gratuities.

(B) The licensee and/or the person owning, operating, managing, or in charge of any establishment licensed pursuant to this chapter shall maintain a register of all persons employed and/or using the establishment at any time as massagist, and their permit numbers.

(C) The records required to be kept by subsection (A) of this section shall be retained for a period of five years after the date of treatment. The records required to be kept by subsection (B) of this section shall be retained for a period of five years after the date of initial employment or use of the establishment.

(D) The records required to be kept by this section shall at all times during the retention period be present on the premises of the licensed establishment. Such records shall be open to inspection as provided in Section 50.16.370.

*50.16.340 Facilities—Minimum Standards.* The premises and equipment of an establishment shall be maintained in a clean, safe and sanitary manner. It shall be the duty of the licensee and/or any person owning, operating, managing or in charge of such establishment to meet the following minimum requirements. . . .

. . .

(L) All establishments must be fitted with an overhead sprinkler system for the purpose of fire prevention.

*50.16.170 Massagist permit—Application—Contents.*

(A) No permit or renewal of a permit to act as a massagist shall be issued or renewed except upon written application filed with the auditor upon forms furnished by the county, which shall be signed and sworn to by the applicant. Each application shall contain the following information: . . .

(12) The name and address of the recognized school attended, the date attended and a copy of the diploma or certificate of graduation awarded the applicant showing the applicant has completed

not less than one hundred hours of resident classroom instruction. In no event shall any person within the purview of this chapter act as aforesaid without satisfying the training requirement set forth within this section after the effective date of the ordinance codified in this chapter;

*50.16.230 Massagist or Employee—Exposing Sexual or Genital Parts Prohibited; Uniform Required.*

It is unlawful for any massagist or employee in an establishment to intentionally expose or fail to conceal his or her, or any other massagist's, sexual or genital parts or any portion thereof to any patron, whether or not the patron requests or acquiesces in the activity. All persons employed as massagists shall wear washable professional type apparel or uniforms while in an establishment. All massagists shall be fully clothed, neat and clean during all times said massagists are on the premises of the establishment.

*50.16.140 Establishment license—Issuance—Grounds for denial.* The auditor shall issue an establishment license to the applicant if all the application requirements of Section 50.16.120 are met, and the statements contained in the application are determined to be true, unless the auditor finds one of the following, in which case the license application shall be denied:

. . .

(C) The applicant, if an individual; or, if a corporation, any of the officers, or directors; or in the case of stockholders, those holding more than ten percent of the stock of such corporation; or, if a partnership, any of the partners, whether general or limited, or the manager or other person principally in charge of the operation of the business, has been convicted of or forfeited bail for any of the following offenses, whether it is a violation of federal, state or local law, or convicted of or forfeited bail for an offense that is reasonably related to his fitness or ability to operate as a massagist. Including, but not limited to any of the following offenses:

(1) An offense involving the use of force or violence upon the person of another that amounts to either a felony or misdemeanor;

(2) An offense involving sexual misconduct, i.e., rape, assignation, prostitution, indecent liberties, lewdness;

(3) An offense involving narcotics, dangerous drugs or dangerous weapons that amounts to a felony;

(4) A crime involving moral turpitude;

(5) A crime of attempting to defraud. The auditor may issue a license to any person convicted of any of the crimes described in subsection (C) of this section if the auditor finds that such conviction or bail forfeiture occurred at least five years prior to the date of the original application and the applicant has had no subsequent felony convictions of any nature nor any subsequent mis-

demeanor convictions or bail forfeitures for crimes mentioned in this section.

. . .

*50.16.160 Establishment license—Grounds for suspension or revocation.*
(A) The following shall be grounds for suspension or revocation of an establishment license issued under the provisions of this chapter:

. . .

(3) The conviction or bail forfeiture of a licensee for violating a federal, state or local law, subsequent to the date of issuance of the establishment license, relating to:
  (a) An offense involving the use of force or violence upon the person of another that amounts to a felony or misdemeanor, or
  (b) An offense involving sexual misconduct, or
  (c) An offense involving possession, use or sale of narcotics, dangerous drugs or alcoholic beverages, or
  (d) An offense involving dangerous weapons which amounts to a felony, or
  (e) An offense involving moral turpitude or the conviction or bail forfeiture of any of the licensee's servants, massagists, agents or employees of an offense involving moral turpitude committed on the premises in which the licensed establishment is located, or . . .

*50.16.180 Massagist permit—Issuance—Grounds for denial.* The auditor shall issue a massagist permit to the applicant if all the application requirements of Section 50.16.170 are met, and the statements contained in the application are determined to be true, unless the auditor finds one of the following:

. . .

(B) The applicant has been convicted of or forfeited bail for any of the following offenses whether the violation is of a federal, state or local law, or convicted of or forfeited bail for an offense outside the state that would have constituted any of the following offenses if committed within the state:
(1) An offense involving the use of force or violence upon the person of another which amounts to a felony or misdemeanor;
(2) An offense involving sexual misconduct;
(3) An offense involving narcotics, dangerous drugs or dangerous weapons which amounts to a felony;
(4) A crime involving moral turpitude;
(5) A crime involving fraud or attempt to defraud.

. . .

*50.16.200 Massagist permit—Grounds for suspension or revocation.*
(A) The following shall be grounds for suspension or revocation of a massagist permit issued under the provisions of this chapter:

. . .

(3) The conviction or bail forfeiture of the massagist for violation of a federal, state or local law subsequent to the date of the issuance of the massagist permit relating to:

   (a) An offense involving the use of force or violence upon the person of another which amounts to a felony or misdemeanor, or

   (b) An offense involving sexual misconduct, or

   (c) An offense involving possession, use or sale of narcotics, dangerous drugs or alcoholic beverages, or

   (d) An offense involving dangerous weapons which amounts to a felony, or

   (e) An offense involving moral turpitude; or

(4) Habitual drunkenness or intemperance in the use of narcotics or stimulants; or . . .

ROSELLINI, STAFFORD, BRACHTENBACH, and PEARSON, JJ., concur.

DORE, J. (dissenting)—I would uphold the constitutionality of all the provisions of resolution 22518 amending chapter 50.16 of the Pierce County Code, except those codified in section 50.16.360. This section requires recordkeeping of patrons' names, addresses, etc. The resolution is presumed valid, and the remaining provisions bear a rational relationship to the underlying purpose of the resolution.

I

Properly enacted statutes are presumed constitutional. As we held in *In re Marriage of Johnson,* 96 Wn.2d 255, 258, 634 P.2d 877 (1981), this court will sustain statutes whenever it can conceive any set of facts which support the statute's constitutionality, and will accept as a verity any legislative declaration of the statute's public purpose, unless arbitrary or unreasonable.

In *Spokane v. Bostrom,* 12 Wn. App. 116, 528 P.2d 500 (1974), the Court of Appeals upheld the conviction of a massage parlor operator for operation during restricted hours. The defendant had appealed his conviction challenging the constitutionality of the ordinance which

required massage parlors and bathhouses to close between the hours of 10 p.m. and 6 a.m. The court stated at pages 117–18:

A municipal corporation may, in the lawful exercise of its police power, regulate massage parlors and massagists.

Thus, the limited issue presented is whether the mandatory closure constitutes a reasonable exercise of the City's police power.

The judiciary should not invade the province of the legislative branch of government. In an attempt to define the boundaries of judicial review of legislative action, certain limitations upon the court have been established:

(a) Any ordinance regularly enacted is presumed constitutional. The presumption applies here.

(b) If a state of facts which would justify the legislation can reasonably be conceived to exist, courts must presume it did exist and the legislation was passed for that purpose. There is no requirement that the court find facts justifying the legislation.

(c) An ordinance to be void for unreasonableness must be clearly and plainly unreasonable.

(d) The burden of establishing the invalidity of an ordinance rests heavily upon the party challenging its constitutionality.

(Citations omitted.) Thus, every possible presumption is to be indulged in favor of the constitutionality of an ordinance. *Winkenwerder v. Yakima,* 52 Wn.2d 617, 624, 328 P.2d 873 (1958); *Spokane v. Coon,* 3 Wn.2d 243, 100 P.2d 36 (1940).

## II

Under a minimum scrutiny rational basis equal protection test, (1) the provisions of an ordinance must bear a real and substantial relationship to the true purpose of the act; and (2) there must, in reality, exist some basis for distinguishing between those within and without the designated class. *Equitable Shipyards, Inc. v. State,* 93 Wn.2d 465, 611 P.2d 396 (1980); *Seattle v. Pullman,* 82 Wn.2d 794, 514 P.2d 1059 (1973). It is this standard which I now apply to the requirements of the massage ordinance.

## A
### LIABILITY INSURANCE COVERAGE

The $300,000 liability insurance coverage provision is within the regulatory power of the County. I agree with the trial judge who observed in his oral opinion that some patron may be burned or otherwise injured while using a sauna. The majority of businesses are required to carry liability insurance to cover such contingencies. Moreover, neither the due process clause nor the equal protection clause compels a legislative body to remedy all of an evil or none. *United States v. Carolene Prods. Co.,* 304 U.S. 144, 151, 82 L. Ed. 1234, 58 S. Ct. 778 (1938). That other business operations may pose equal or greater risk of injury does not bar legislative action here. The majority agrees that this provision is well within the regulatory powers of the County. I concur.

## B
### INSTALLATION OF OVERHEAD FIRE SPRINKLER SYSTEMS

The majority holds that despite the stated purpose of protecting the public health, safety and welfare, the ordinance was really enacted to restrict lewd and immoral activities. Appellants cite *303 W. 42nd St. Corp. v. Klein,* 58 A.D.2d 778, 396 N.Y.S.2d 385 (1977) as analogous to the subject case. In *Klein,* the court held that the government could not put "Show–World", which conducted "sexually oriented activities", out of business simply by imposing fire safety codes requiring prohibitively expensive sprinkler systems.

As indicated in *Bostrom,* at page 118, however, if a state of facts which would justify the legislation can reasonably be conceived to exist, courts must presume it did exist and the legislation was passed for that purpose. There is no requirement that the court find facts justifying the legislation. The sheriff testified in hearings before the Pierce County Board of County Commissioners that sauna parlors, with steam and high heat, are particularly susceptible to fire and represent a fire hazard. Even if massage parlors did not present such an enhanced risk, the Board might well

have concluded that massage parlor patrons are particularly susceptible to fire danger. A customer wrapped in nothing but a towel during his or her massage or relaxing with his or her eyes closed in a steam room might well react less quickly to fire than customers in a more standard retail setting.

Further, the Board is no more obliged to enact an all–encompassing remedy here than it is with respect to liability insurance. All businesses pose some fire hazard and the Board is not obliged to act with respect to all at once. This requirement is clearly reasonable and does not violate equal protection provisions of the constitution.

## C
### MINIMUM EDUCATION REQUIREMENT

The majority resolved that the educational requirement as contained in the resolution bears no reasonable relationship to the underlying purpose of the ordinance and that it does not serve to restrict lewd or immoral activity. While the educational requirement may well serve to restrict lewd or immoral activity, the stated purposes of the ordinance are the protection of public health, safety and welfare. We are persuaded by the County's argument that massagists without any instruction in the profession could endanger the health of patrons, even though such employees may have passed a difficult state test when they became licensed masseurs.

This result comports with the reasoning of courts in other jurisdictions which have upheld more stringent education requirements for massage parlor employees. *See Rogers v. Miller,* 401 F. Supp. 826, 828 (E.D. Va. 1975) (1,000 hours of study); *MRM, Inc. v. Davenport,* 290 N.W.2d 338 (Iowa 1980) (750 hours of study); *Massage Parlors, Inc. v. Mayor & City Coun.,* 284 Md. 490, 498 n.5, 398 A.2d 52 (1979) (upholding a 500–hour requirement). The American Massage Therapy Association requires 1,000 hours of course work. I would uphold the validity of the ordinance's educational requirement.

### D
### Uniform Requirement

The ordinance amendment also requires that persons employed as massagists shall wear "washable professional type apparel or uniforms" and must be "fully clothed, neat and clean" while on the premises. The majority would have you believe that this provision is void for vagueness.

I do not find the phrase "washable professional type apparel or uniforms" vague. While this language might have been drafted with greater precision, this does not, in itself, render the ordinance constitutionally infirm. *Harper v. Lindsay,* 616 F.2d 849, 857 (5th Cir. 1980). The description "professional type", which we construe as qualifying both "apparel" and "uniforms" must be read in light of the total ordinance of which it is a part. *See State v. Wanrow,* 88 Wn.2d 221, 228, 559 P.2d 548 (1977). I interpret it as requiring massagists to wear apparel of the type customarily worn by others in the profession.

With respect to the terms "fully clothed, neat and clean", appellants' complaint is not wholly without merit. These terms may well be constitutionally vague as applied to some conduct; for example, it is unclear whether they encompass the wearing of a bathing suit. On the other hand, other conduct is clearly within or outside the statute; for example, nudity is clearly barred and the wearing of a nurse-type uniform is clearly permitted. The statute is thus only "partially vague"; *i.e.,* it is vague as to only some conduct. *See* Evans, *Void–For–Vagueness—Judicial Response to Allegedly Vague Statutes—State v. Zuanich, 92 Wn.2d 61, 593 P.2d 1314 (1979),* 56 Wash. L. Rev. 131, 136–37 (1980).

When a statute is only partially vague, a party has standing to challenge it only if that party has engaged in or seeks to engage in conduct within the "gray area". *See Parker v. Levy,* 417 U.S. 733, 756, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974); *State v. Sherman,* 98 Wn.2d 53, 56, 653 P.2d 612 (1982); Note, *The Void–for–Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67, 101 (1960). In this declaratory judgment action, appellants propose no

specific apparel they wish to wear. They, therefore, lack standing to challenge the validity of the phrase "fully clothed, neat and clean". *Cf. United Pub. Workers v. Mitchell,* 330 U.S. 75, 90, 91 L. Ed. 754, 67 S. Ct. 556 (1947) (public workers could not challenge ban on "political activity" until clear what activity they wished to engage in). The majority is extremely vague in its analysis of this section.

## E
### Two–Way Viewing Requirement

The majority holds that the requirements of unobstructed doorways and windows violate the patrons' privacy rights. The United States Supreme Court held in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65–66, 37 L. Ed. 2d 446, 93 S. Ct. 2628, *reh'g denied,* 414 U.S. 881, 38 L. Ed. 2d 128, 94 S. Ct. 27 (1973), *cert. denied,* 418 U.S. 939, 41 L. Ed. 2d 1173, 94 S. Ct. 3227 (1974) that the constitutional right to privacy extends only to fundamental rights. The Court stated:

> Our prior decisions recognizing a right to privacy guaranteed by the Fourteenth Amendment included "only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. Nothing, however, in this Court's decisions intimates that there is any "fundamental" privacy right "implicit in the concept of ordered liberty" to watch obscene movies in places of public accommodation.

(Citations omitted.)

While there are no Washington cases on this issue, the Alaska Supreme Court in 1980 held there was no subjective expectation of privacy either for the operators or customers of a public business which purports to offer legitimate massages. *Hilbers v. Anchorage,* 611 P.2d 31 (Alaska 1980). Additionally, in *J.B.K., Inc. v. Caron,* 600 F.2d 710 (8th Cir. 1979), the court stated the right to privacy did not extend to all sexual practices performed in private, including the commercialized sexual activities regulated in that

case.

The trial court in the present case observed that an unobstructed doorway would protect patrons in case of fire. Such a windowed doorway would also make it easier for personnel to observe whether the person taking a sauna had succumbed to the heat and steam. The trial judge found this provision of the resolution reasonable and I agree.

## F
### PRIOR CONVICTIONS AS BASIS FOR REVOCATION OR SUSPENSION

Appellant massagists argue an automatic denial of a license or a refusal to renew their licenses regardless of the nature of the offense violates their due process rights. The offenses listed include those of force, sexual misconduct, narcotics or dangerous drugs, moral turpitude and fraud, and felonious use of dangerous weapons. The ordinance provides an appeal process for suspension or revocation, including stringent notice requirements. It also permits issuance or renewal despite a prior conviction of the types specified if the conviction is at least 5 years old.

Initially, we note that these general categories of crimes are not to be construed in their abstract sense apart from their relevance to fitness to be a massagist. *Cf. Gaylord v. Tacoma Sch. Dist. 10,* 88 Wn.2d 286, 290–91, 559 P.2d 1340, *cert. denied,* 434 U.S. 879 (1977) (construing "immorality" as ground for teacher discharge to encompass only immorality which may adversely affect teaching performance). For example, a crime of "moral turpitude" is grounds for disqualification of an applicant only if it reflects on his or her fitness to be a massagist.

So construed, I do not believe the categories of crime specified in the ordinance are so unrelated to fitness to be a massagist as to deny due process. The private and personalized nature of massage clearly provides greater opportunity for drug transactions and prostitution and other sexual misconduct. The relaxation of customers and their exposure to permitted physical contact in the form of massage makes

them significantly more vulnerable to crimes such as assault and indecent liberties. Any business customer is a potential victim of fraud as well, though massage parlor customers concededly seem no more vulnerable than most.

## G
### RECORDKEEPING REQUIREMENT

I turn next to the ordinance amendment's requirement that a record of the names and addresses of patrons be kept. I agree with the majority and its reasoning in holding that this section of the ordinance constitutes an impermissible and unconstitutional abridgment of one's rights.

### CONCLUSION

In summary, I would hold that all the provisions of the ordinance, as amended, except the recordkeeping requirement, bear a rational relationship to the underlying purpose of the resolution. The challenged amendments are designed to protect the public health, safety and welfare of the people of Pierce County, and are a bona fide attempt to restrict possibly harmful activities within the massage industry.

Section 50.16.420 provides for the severability of each provision of the resolution. I would hold the recordkeeping provision, section 50.16.360, invalid and uphold the remaining sections of the Pierce County Code as amended by resolution 22518.

DOLLIVER and DIMMICK, JJ., concur with DORE, J.
UTTER, J., concurs in sections IIA, B, D, F, and G.

Reconsideration denied April 25, 1984.